**Ellen Golden and Thomas E. Hunt, Administrators, Plaintiffs in Error, v. South Chicago City Railway Company, Defendant in Error.**

**Gen. No. 18,104.**

1. APPEALS AND ERRORS—*where verdict of not guilty is sustained.* In an action for death where it is alleged that defendant negligently ran a street car over an excavation in which plaintiff's intestate was working and caused the excavation to cave in on him, there being evidence that the excavation was in violation of city ordinances, that the soil was loose and unsupported, and that deceased, an experienced drain layer, must have known of the danger, a verdict of not guilty will be affirmed.

2. EVIDENCE—*res gestae.* In an action for the death of plaintiff's intestate, a drain layer, killed by an excavation caving in, the testimony of a witness as to what he heard men around the scene of the accident say as to how the excavation caved in is admissible as part of the *res gestae.*

Error to the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed May 8, 1913.

DAVID K. TONE, H. M. ASHTON and ELMER J. TONE, for plaintiffs in error.

ZANE, BUSBY & WEBER, for defendant in error.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an action against the South Chicago City Railway Company, hereinafter called the defendant, to recover damages for the death of Thomas Golden on the 8th of May, 1908. Upon the trial the jury returned a verdict finding the defendant not guilty, and the administrators of the estate of Thomas Golden are asking this court to reverse the judgment entered upon the verdict.

The amended additional count upon which the case was tried alleged that the defendant was operating street cars on Superior avenue in Chicago; that Golden at the time of the accident was employed by a drain contractor named Keiss, to construct a drain or sewer in said street; that in doing so Golden and other workmen dug an excavation in Superior avenue and beneath the tracks of the defendant; that said excavation was liable to cave in when cars were operated over it unless such cars were operated with care and at a low rate of speed; that while Golden was working in said excavation with the knowledge of the defendant, it carelessly and negligently ran its cars over said excavation at a high rate of speed, and that by reason thereof the banks of said excavation became jarred and loosened and caved in upon Golden, by means whereof he was killed.

The evidence presented to the jury tended to show in part that at the time of this work the ordinances of the city required, under penalty, that every private drain or sewer must be constructed in conformity with the orders of the commissioner of public works, and that the ordinances also forbade any person, without a permit in writing from said commissioner, to place any pipe underneath any street surface. The rules of the commissioner required all drains to be laid in open trenches and forbade an interference with the running of street cars.

The deceased, Thomas Golden, was an experienced

drain layer in the employ of Keiss. Keiss had notified the Street Railway Company that he intended to lay a sewer underneath the tracks, but there is no evidence that he obtained the necessary permits prescribed by the city ordinances. On the morning that the men started to work they cut an open trench from the sidewalk on the east side of the street out to the east or north-bound track, about six feet deep. The testimony tends strongly to show that at this time Keiss, the contractor, was drinking and intoxicated. About the noon hour, having reached the east track in the street, the men started to tunnel under it and continued this work after one o'clock. Keiss did not order this work done, but Golden selected that way himself. One of the men working with Golden objected to working in the tunnel under the track, on the ground that it was dangerous, and withdrew. This was in the presence and hearing of Golden. However, Golden continued with the work of drilling under the track. At this time a drain inspector for the city, in the hearing and presence of Golden, warned Keiss that the work could not be done in that way since the ground would not hold, and that he ought to hold it up in some way. The ground at this place was loose and sandy and would not stand without support, but Keiss put in no supports or sheeting.

When Golden reached the main sewer in the tunnel he used a large hammer in order to make the connection. The hammer was used to make a hole in the main sewer. Golden took the hammer and began striking on the pipe to make the connection. Just before this time a car had come up from the south, and Keiss had signalled it to slow down. The testimony tended to show that the car was slowed down by the motorman and that it proceeded slowly up to the excavation and crossed it at a slow rate of speed, Keiss following it up to the excavation. The car passed over and turned the corner at the next cross street. About eight or ten minutes after this car had passed, and while

Golden was striking upon the main sewer with the eight pound hammer, the ground suddenly caved in upon him clear from the surface. The men rushed to dig him out but while they were digging the ground caved the second time. When at last Golden was gotten out of the ditch he was dead.

In the main the above testimony is not disputed, although the testimony given by Keiss and a workman named Higgins tends to contradict some of the foregoing statements. It was sought to impeach their testimony by showing that upon this trial it was not in accord with their testimony given before the coroner's jury and upon a former trial. It was for the jury to weigh the evidence, and we cannot say that it was not justified in concluding that these two witnesses were mistaken upon some of the points involved.

After a consideration of the entire record before us we have reached the conclusion that no other verdict could have been properly returned by the jury than the verdict it did return upon the trial. The evidence clearly shows that Golden knew that he was violating the regulations of the city in drilling under a street railway track without permission. It is further obvious that the situation of the ground, its loose character, the necessity of supports or sheeting in the trench or for the sides and roof of the tunnel, and the danger of working in the tunnel under such conditions, were as fully apparent to Golden, if not more so, as to any one else. It is not disputed that Golden was an experienced drain layer, and the evidence tends to show that the particular method of work in this instance was largely within the control and direction of Golden. It is also in evidence that others were aware of the danger and warned of it, and that one of his fellow-workmen abandoned the work protesting that he did so on account of the danger involved; and all this was in the presence of Golden.

We feel bound to conclude that the conduct of Golden amounted to negligence directly contributing

to the accident in question, and that the jury was amply justified in so finding from the evidence. We are also of the opinion that the evidence shows that the cause of the accident was not the passing of the street car, but because of the loose character of the soil in which the trench and tunnel were dug, together with the failure of the contractor, Keiss, properly to guard against the danger of a cave-in by the use of supports or sheeting.

Plaintiffs complain of certain instructions given by the court at the request of the defendant. We are of the opinion that the criticisms of these instructions are not sound. In any event any inaccuracies appearing therein are not of sufficient importance to justify a reversal.

Complaint is also made of the ruling of the court in permitting a witness to testify as to what he heard the men around the scene of the accident say as to how the tunnel caved in. It is contended by plaintiffs that this testimony should have been stricken out on the ground that it was simply hearsay, while the defendant contends that these statements were a part of the *res gestae*. It is frequently difficult to determine what conduct or statements by bystanders constitute a part of the *res gestae,* and we are not prepared to say that in all cases the opinions of bystanders as to the cause of an accident are admissible, even though such opinions may have been expressed immediately after the occurrence and so closely connected with it as to allow no time to fabricate a story. However, in this particular case a consideration of the testimony leaves us in very little, if any, doubt that the cave-in was the result of the failure of the contractor and of the deceased himself properly to support the sides of the trench and the roof and sides of the tunnel. Furthermore an examination of the testimony of the witness gives very little, if any, information as to the cause of the accident, for when he inquired of by-

standers as to how it had caved in the reply was that it had "just caved in." This of course does not throw any light upon the real question involved, and we cannot conclude under the circumstances that the refusal of the trial court to strike out the testimony was reversible error.

Having reached the conclusion that the jury returned the only verdict which could reasonably be returned upon the evidence before it, and that no reversible errors occurred upon the trial, the judgment will be affirmed.

*Affirmed.*